IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MIKE EMKE,** | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-244-L** |
| | § | |
| **DANIEL J. SHERMAN**, | § | |
| | § | |
| Appellee. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Appellant Mike Emke's appeal of the bankruptcy court's final judgment

entered on October 18, 2011.  This final judgment awarded attorney's fees to the Appellee Daniel

J. Sherman ("Sherman" or "Trustee"), and the bankruptcy court determined the amount of attorney's

fees to award by separate order on December 27, 2011.  After careful consideration of the briefs,

the record on appeal, and the applicable law, the court **reverses** the bankruptcy court's decision to

award attorney's fees and **remands** this case for further proceedings consistent with this opinion.[1]

**I.      Procedural and Factual Background**

This bankruptcy appeal arises from the bankruptcy proceedings regarding Ondova Limited

Company ("Ondova") and a settlement agreement entered into between Ondova and Appellant Mike

Emke ("Emke").  Ondova and Emke were in several lawsuits concerning ownership of the Internet

domain name, "Servers.com" (the "Domain Name").

_____

[1] The court apologizes for the delay in issuing its opinion.  Due to a clerical glitch, this case only appeared on the court's electronic reporting system after March 31, 2015, and the court has worked expeditiously to resolve this case since it become aware of it.

**Memorandum Opinion and Order - Page 1**

Emke specifically challenges the bankruptcy court's award of attorney's fees under Texas Civil Practice and Remedies Code Chapter 38, which allows a party to recover reasonable attorney's fees if he or she prevails on a breach of contract claim. Tex. Civ. Prac. & Rem. Code Ann. § 38.001. The bankruptcy court initially held that Emke breached the Settlement Agreement for two reasons: (1) he failed to uphold his development obligations; and (2) he breached the cancellation provision within the Settlement Agreement. The bankruptcy court, however, later withdrew its holding as to Emke's breach of his development obligations and concluded that it was not part of a core bankruptcy proceeding. As a result, the award of attorney's fees is based solely on the bankruptcy court's determination that Emke breached the cancellation provision.[2]

## II.    Undisputed Facts

As a preliminary matter, the court notes that Emke did not designate the trial transcript or the transcript relating to the determination of attorney's fees as part of the record on appeal. As a result, the court accepts the bankruptcy judge's findings of fact as undisputed. Appellant's Br. 7 ("The relevant facts necessary to decide this appeal are simple, straightforward and undisputed."); Appellant's Reply Br. 1-2 ("There was no need to cite to the transcript for facts that are undisputed and for which appellant relied on the Bankruptcy Court's findings of fact."); Appellant's Reply Br.2 ("Appellant is not seeking to overturn the Bankruptcy Court's relevant and undisputed factual findings."). The court summarizes below the relevant portion of the bankruptcy court's findings of fact, which it accepts as undisputed.

---

[2] The case was handled separately in this court and dismissed without prejudice on May 12, 2014. *See* Judgment (Doc. 18), May 12, 2014, *Daniel J. Sherman, Chapter 11 Trustee v. Mike Emke and Servers, Inc.*, 11-cv-1971.

On July 6, 2009, Ondova and Emke settled their dispute by signing an agreement ("Settlement Agreement").  On July 27, 2009, Ondova filed for Chapter 11 bankruptcy.  Emke maintains that he was unaware of Ondova's filing for bankruptcy when he created Servers, Inc., which he created pursuant to the parties' Settlement Agreement, on August 10, 2009.  On September 17, 2009, the bankruptcy court appointed Sherman as the Chapter 11 Trustee over Ondova.

Pursuant to the Settlement Agreement, the parties agreed that they would each own a 50% interest in Servers, Inc., and Servers Inc. would, in turn, own the Domain Name.  Emke was responsible for development.  *See* Findings of Fact, Conclusions of Law at 3, R. at 11 ("Emke shall be responsible for all business-related activities . . . ."; "[ONDOVA] shall not be responsible to actively participate in the management activities . . . .").

Subsequent to the formation of Servers, Inc., Emke did not take steps to develop the business, but he advised the Trustee that he would fulfill his duties under the Settlement Agreement. *Id.* at 4.  The Trustee, however, eventually sought a sale from Emke.  Emke conditioned his consent to the sale on receiving more than 50% of the sale proceeds.  In response, the Trustee filed an adversary proceeding with the bankruptcy court.

The bankruptcy court determined that: (1) that Emke breached the Settlement Agreement by refusing to agree to a sale unless he received more than 50% of the proceeds; (2) Emke and Herring, acting as an agent of Emke, failed to make any reasonable efforts to develop Servers, Inc.; (3) mediation and arbitration would delay rather than expedite the resolution of disputes; (4) the Trustee is entitled to specific performance as a result of Emke's breach of contract and the Domain name should be sold; and (5) the Trustee was entitled to reasonable attorney's fees from Emke. *See* Findings of Fact, Conclusions of Law at 6-7,  R. at 14-16.  The bankruptcy court ordered the sale of

the Domain name both as a remedy for Emke's breach of contract and pursuant to its authority under

Bankruptcy Code Section 363(h).[3] *Id.* at 7.

The issue on appeal is whether the bankruptcy court properly awarded attorney's fees to the

Trustee. Emke is liable for attorney's fees only if he breached the Settlement Agreement, and Emke

contends that the bankruptcy court erred when it held that he did. Emke requests that the court

reverse the bankruptcy court's order "finding him in breach of the cancellation and sales clause of

the Agreement; reverse the award of costs and attorney[']s fees to the Trustee in the total amount of

$318, 937.03; and grant costs and [a]ttorney[']s fees to appellant as the prevailing party in an amount

to be determined after a hearing on the matter." Appellant's Br. at 32.

III.    **Legal Standard**

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under

the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are

reviewed for clear error, and its conclusions of law are reviewed *de novo*. *See Robertson v. Dennis*

---

[3] The bankruptcy court made findings in accordance with Bankruptcy Code Section 363(h), which provides as follows:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Emke does not appeal the bankruptcy court's order to sell the Domain Name pursuant to its authority under Bankruptcy Code Section 363(h). *See* Appellant's Reply Br. 22 ("The Bankruptcy court also ordered the sale of the domain name. Appellant is not appealing that decision [,] nor is he seeking to arbitrate the sale.").

**Memorandum Opinion and Order - Page 4**

*(In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. Nat'l Gypsum Co.*

*Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000).

A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall

not be set aside unless clearly erroneous." Fed. R. Bankr.P. 8013.  A finding is clearly erroneous and

reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm

conviction that a mistake has been made."  *In re Dennis*, 330 F.3d at 701 (citation omitted).  In

conducting this review, the court must give due regard to the opportunity of the bankruptcy judge

to determine the credibility of the witnesses.  *Id.*; *see also Young v. Nat'l Union Fire Ins. Co. (In re*

*Young)*, 995 F.2d 547, 548 (5th Cir. 1993) (quoting Fed. R. Bankr. P. 8013).

## IV.    Analysis

The court has conducted a *de novo* review of the bankruptcy court's conclusions of law and,

for the reasons set forth below, determines that the contract is unambiguous and that Emke did not

breach the Agreement.  Accordingly, the court concludes that the bankruptcy court erred in its

decision to award attorney's fees to the Trustee.[4]

The bankruptcy court held that "Emke breached his obligations under Section 6 of the

Settlement Agreement by refusing to agree to a sale unless Emke received more than 50 percent of

---

[4] The cancellation provision within the Settlement Agreement provides as follows:

> If the parties cannot agree on whether Emke's management of the business is maximizing the value of the business, and <servers.com> in particular, the parties may seek one of the following remedies: (1) The parties may seek to sell the business and/or the domain name <servers.com> and divide the revenues equally; (2) one party may buy out the other party for amount equal to 50% of the sales value of the business and/or <servers.com> based on a best efforts attempt to find a buyer at the highest possible price upon agreement between the parties; or (3) the parties may submit their dispute under the mediation and arbitration provisions of section IX below in order to liquidate the business and partnership or effect a buyout by one party from the other party.

Settlement Agreement 2, Section VI, R. at 342.

**Memorandum Opinion and Order - Page 5**

the proceeds." Findings of Fact, Conclusions of Law and Order 6, R. at 14.  Emke, however, points

out that the contract provides for two additional options for canceling the Settlement Agreement and

contends that the bankruptcy court wrongly invalidated both the buyout option and the mediation and

arbitration option within the cancellation provision.

The court determines that the contract is unambiguous and that Emke did not breach the

cancellation provision therein contained.  *See Interstate Contracting Corp. v. City of Dallas, Tex.*,

407 F.3d 708, 713 (5th Cir. 2005) ("If the contract is then susceptible to only one interpretation, it

is unambiguous.") (citation omitted).[5] The cancellation provision limits the parties to three options,

and, based on the plain language of the text, none of these options is mandatory. *See* Settlement

Agreement 2, Section VI, R. at 342 ("(1) The parties may seek to sell the business and/or the domain

name <servers.com> and divide the revenues equally; (2) one party may buy out the other party for

amount equal to 50% of the sales value of the business and/or <servers.com> based on a best efforts

attempt to find a buyer at the highest possible price upon agreement between the parties; or (3) the

parties may submit their dispute under the mediation and arbitration provisions of section IX . . . .").

While the contract provides the parties with three options for cancellation, it clearly does not

make any option mandatory and states that "the parties *may seek* one of the following remedies . . . ."

Settlement Agreement 2, Section VI, R. at 342 (emphasis added).  The sales option, likewise,

contains permissive language and states that the "parties *may seek* to sell" the Domain Name  *Id.*

The bankruptcy court did not accord proper consideration to the other two options in the

contract, and it erred by treating the sales option as mandatory and the only option available to the

---

[5] In his appeal, Emke contends that the contract is unambiguous, and, as a result, he does not submit any evidence regarding the parties' intent. Appellant's Br. 16 ("In the present case, neither party argued that the Settlement Agreement in question was ambiguous.  No evidence of the contracting parties' intent was introduced at trial.").

parties.   Nothing in the contract indicates a preference or a requirement that the parties sell the Domain Name, and the contract did not require Emke to agree to a sale merely because the Trustee requested it.

Additionally, the cancellation provision clearly references "the parties" and, as a result, contemplates joint agreement between both Emke and the Trustee.   In other words, by referring to the "parties," the text presupposes that the parties will reach an agreement regarding the appropriate course of action for canceling the Settlement Agreement, and, therefore, Emke was under no obligation to sell the Domain Name.

The court further determines that Emke's request for more than 50% of the sale proceeds does not constitute a breach of the Agreement.  The option providing for sale of the Domain Name allows the parties to divide the revenues equally. *See* Settlement Agreement 2, Section VI, R. at 342 ("The parties *may* seek to sell . . . and divide the revenues equally . . . .") (emphasis added).  The word "may" not only applies to "seek," but it also applies to "divide," and, therefore, further underscores the permissive nature of the cancellation provision. Moreover, even if "may" does not apply to "divide," the use of the word "may" alone makes each of the options permissive as to which one is selected by the parties.

As to the division of the sale proceeds, the bankruptcy court stated the following: "[T]he Settlement Agreement could have provided Emke with a larger share of sale proceeds upon a sale, but it did not.  Fifty percent is what the parties agreed to."  Findings of Fact, Conclusions of Law and Order 5, R. at 13.  The option providing for sale of the Domain Name, however, does not mention division of the *sale proceeds*; rather, it mentions division of the *revenue*.  Revenue, however, is not the same as sale proceeds.  While the buyout option contemplates selling the Domain Name for 50%

**Memorandum Opinion and Order - Page 7**

of the sales value, the sales option only mentions dividing the revenues equally.  Thus, the bankruptcy court conflated two subsections of the cancellation provision, and its interpretation of the sales option is not supported by the text of the Settlement Agreement.

Ultimately, the court determines that Emke did not breach the contract.  In light of this decision, the court will reverse and remand the bankruptcy court's award of attorney's fees under Texas Civil Remedies Code Chapter 38, as this award was predicated on Emke's breach of Section 6 of the Settlement Agreement. Further, the court declines to rule that Emke is entitled to attorney's fees based on the record before it. Moreover, the court cannot conclude that Emke is a "prevailing party." These are matters to be addressed by the bankruptcy court on remand.

## V.      Conclusion

For the reasons herein stated, the court **reverses** the bankruptcy court's judgment and order awarding attorney's fees and expenses to the Trustee.  The  decision to award attorney's fees and expenses to the Trustee is **hereby remanded** to the bankruptcy court for further proceedings consistent with this opinion.

Pursuant to Federal Bankruptcy Rule 8016(a) the court **directs** the clerk of the court to prepare, sign, and enter judgment once it receives a copy of this memorandum opinion and order. All allowable and reasonable costs incurred by Appellant are taxed against Sherman.

**It is so ordered** this 31st day of August, 2015.

Sam A. Lindsay
United States District Judge